UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OYETO-OLA BRICE KAYOSSI,

                              Plaintiff,

        -v-

GRACE K SHIPPING, LLC, et al.,

                              Defendants.

CIVIL ACTION NO. 25 Civ. 9652 (PAE) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge

## I. INTRODUCTION

Pro se Plaintiff Oyeto-Ola Brice Kayossi ("Mr. Kayossi") sues Defendants Grace K Shipping, LLC ("Grace Shipping") and Daniel Kassaouhouin ("Mr. Kassaouhouin") (together, "Defendants") for breach of contract and related claims. (Dkt. No. 10 (the "Amended Complaint")). Mr. Kayossi asserts that the Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. § 1332 ("Section 1332"), the diversity jurisdiction statute. (Id. at 1 ¶ 4). For the reasons stated below, we respectfully recommend that the Court sua sponte **DISMISS** the Amended Complaint for lack of subject matter jurisdiction without leave to amend and without prejudice to Mr. Kayossi's ability to file the action in a court of competent jurisdiction.

1

## II.<u>BACKGROUND</u>

### A.  <u>Factual Background</u>[1]

Mr. Kayossi is an individual who resides in Nebraska.  (Dkt. No. 10 at 1 ¶ 1).  Grace Shipping is a New York "shipping company" with a principal place of business in Bronx, New York. (<u>Id.</u> at 1 ¶ 2).  Mr. Kassaouhouin is an individual who resides in New York and is the owner and managing agent of Grace Shipping and "personally participated in and directed the acts complained of" in the Complaint.  (<u>Id.</u> at 1 ¶ 3).

In "early 2024," Mr. Kayossi and Grace Shipping entered into a contract (the "Contract") "for the shipment of 17 bales of secondhand clothing from New York, United States, to Cotonou, Benin."  (Dkt. Nos. 10 at 1 ¶ 6; 10-3).[2]  The parties agreed on a $1,400.00 shipping fee, secured by 15 mattresses (the "Mattresses") belonging to Mr. Kayossi, "which were placed in [Grace Shipping's] possession as collateral."  (Dkt. Nos. 10 at 1 ¶ 7; 10-3).

On February 6, 2024, Mr. Kayossi provided written authorization to Mr. Kassaouhouin to "sell the [Mattresses], deduct the $1,400[.00] owed for shipping, and remit the remaining balance to [Mr. Kayossi]."  (Dkt. No. 10 at 1 ¶ 8).  Mr. Kassaouhouin, however, claimed that "the [M]attresses were deteriorated and could not be sold."  (<u>Id.</u> at 1 ¶ 9).  Mr. Kayossi requested "photographic proof of the alleged deterioration," but Mr. Kassaouhouin did not provide it and "subsequently ceased communication."  (<u>Id.</u> at 1 ¶ 10).  Mr. Kassaouhouin later admitted that "he had sold the [M]attresses but dishonestly claimed that he had received only 11 mattresses

---

[1] The facts below are taken from the Amended Complaint, (Dkt. No. 10), and do not constitute findings of fact.

[2] Although Mr. Kayossi alleges in the Amended Complaint that the Contract was entered into in "early 2024[,]" the copy of the Contract attached to the Amended Complaint is dated March 15, 2022. (Dkt. No. 10 at 1 ¶ 6; 10-3).  This discrepancy is not material to our analysis.

instead of 15." (Id. at 1 ¶ 11). "Upon being presented with text message evidence confirming that 15 mattresses had been delivered, [Mr.] Kassaouhouin acknowledged the full sale and promised to provide a legitimate sales receipt." (Id. at 1 ¶ 12). Instead, Mr. Kassaouhouin produced a "fraudulent receipt" for the Mattresses indicating "12 Queen mattresses sold at $120 each and 3 King mattresses sold at $100 each, totaling $1,740.00." (Id. at 1 ¶¶ 13–14, 16). Mr. Kayossi, however, asserts that he "provided the following inventory: 1 King, 6 Queen, 5 Full, and 3 Twin mattresses, collectively valued at $14,985.00 in retail price." (Id. at 1 ¶ 15). Mr. Kayossi alleges that "[Mr.] Kassaouhouin intentionally and dishonestly diverted the proceeds of the sale for his personal gain instead of deducting the shipping cost and returning the remaining balance as agreed." (Id. at 1 ¶ 17).

### B. Procedural Background

On November 18, 2025, Mr. Kayossi filed the Complaint asserting claims for breach of contract, "fraud and misrepresentation[,]" conversion, and unjust enrichment. (Dkt. No. 1). In the Complaint, Mr. Kayossi sought $13,585.00 in damages, "representing the total retail value of $14,985.00 minus the $1,400.00 shipping fee[,]" along with an unspecified amount of punitive damages, and "any consequential damages that may be proven at trial." (Id. at 2). On December 9, 2025, the Court granted Mr. Kayossi's application to proceed in forma pauperis ("IFP"), (Dkt. No. 2), and authorized Mr. Kayossi to proceed without the prepayment of fees. (Dkt. No. 5).

On April 15, 2026, Judge Engelmayer, issued an Order identifying "a potential jurisdictional defect" in the Complaint. (Dkt. No. 9 at 1). Specifically, "[d]iversity jurisdiction under [Section 1332] requires an amount in controversy of more than $75,000," but the

Complaint alleged that Mr. Kayossi incurred "a financial loss of approximately $13,585[,]" an amount "significantly lower than required for diversity jurisdiction." (Id.) Judge Engelmayer granted Mr. Kayossi leave to amend the Complaint by May 6, 2026, and stated, "if any amended complaint also does not allege a sufficient basis for jurisdiction, the Court will dismiss the operative complaint, without prejudice to [Mr.] Kayossi's ability to file the action in a court of competent jurisdiction." (Id.)

On May 4, 2026, Mr. Kayossi filed the Amended Complaint, updating his damages calculation to also include interest and "court costs" in an unspecified amount and "$80,000.00 in compensation for emotional distress caused by Defendants' alleged fraudulent conduct, misrepresentation, conversion, and refusal to remit the proceeds from the sale of [Mr. Kayossi's] property." (Dkt. No. 10 at 2). Mr. Kayossi now seeks $93,484.00 in compensatory damages including the previously requested $13,585.00, "representing the total retail value of $14,985.00 [for the Mattresses] minus the $1,400 shipping fee," plus $80,000.00 in "emotional distress damages, along with punitive damages, interest, court costs, and any consequential damages that may be proven at trial." (Id. at 2). On May 6, 2026, Judge Engelmayer referred this action to the undersigned for general pretrial management. (Dkt. No. 12). To date, Defendants have not been served with process.

### III. DISCUSSION

#### A. Legal Standard

We reiterate the "fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc., 943 F.3d

4

613, 616–17 (2d Cir. 2019).[3]  As the Second Circuit has recognized, "[p]erhaps the most important limit is subject-matter jurisdiction, which defines a court's competence to adjudicate a particular category of cases."  Id. at 617.  "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," and district courts "may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence."  Id. at 617–18.  District courts thus have an "independent obligation" to determine whether subject matter jurisdiction exists over each case.  Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006).  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte."  Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).  "If subject matter jurisdiction is lacking, the action must be dismissed."  Id. at 701.

For a district court to have subject matter jurisdiction, a case must present a "federal question," see 28 U.S.C. § 1331, or satisfy Section 1332 through complete diversity of citizenship and an amount in controversy exceeding $75,000.  See 28 U.S.C. § 1332.  For parties to be completely diverse, "each defendant [must be] a citizen of a different State from each plaintiff."  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).  As for the amount in controversy, a plaintiff must "present[] a claim [] that exceeds the required jurisdictional amount, currently $75,000."  Smith v. Parsons, No. 09 Civ. 2921 (BMC), 2009 WL 3052631, at *1 (E.D.N.Y. Sept. 22, 2009) (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006)).  "A party invoking [diversity jurisdiction] has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003).  There is a "rebuttable

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

5

presumption[,]" however, "that the face of the complaint is a good faith representation of the actual amount in controversy." Id.

That said, "if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered to a legal certainty, the case is dismissed for lack of subject matter jurisdiction." Hall v. EarthLink Network, Inc., 396 F.3d 500, 507 n.5 (2d Cir. 2005); see Capeci v. Seven Corners Inc., No. 22 Civ. 6644 (RPK) (PK), 2022 WL 17253527, at *1 (E.D.N.Y. Nov. 28, 2022) ("If it is apparent to a legal certainty that a party invoking diversity jurisdiction cannot recover more than $75,000, the lawsuit should be dismissed."). If the alleged amount in controversy is premised on damages that are unavailable as a matter of law, then those damages "may not be used to meet the diversity jurisdiction threshold." Bracken v. MH Pillars Inc., 290 F. Supp. 3d 258, 268 (S.D.N.Y. 2017).

### B. Application

As an initial matter, Mr. Kayossi's breach of contract and related claims in the Amended Complaint arise under state law and do not present a federal question pursuant to 28 U.S.C. § 1331. As for Mr. Kayossi's invocation of the Court's diversity jurisdiction under Section 1332, although there is "complete diversity," between the parties, see Owen Equip., 437 U.S. at 373, Mr. Kayossi does not meet the amount in controversy requirement. We analyze each of Mr. Kayossi's claimed damages below for the purpose of calculating the amount in controversy and find that while Mr. Kayossi's claim for $13,585.00, "representing the total retail value of $14,985.00 [of the Mattresses] minus the $1,400.00 shipping fee[,]"counts towards the amount in controversy, his other claimed damages do not. (Dkt. No. 10 at 2).

### 1. **Interest and Court Costs**

Mr. Kayossi's request for interest and "court costs" in an unspecified amount do not count towards the amount in controversy. In the first instance, is unclear what "court costs" Mr. Kayossi would incur given that the Court has granted his IFP application, authorizing him to proceed in this action without the prepayment of fees or costs. (Dkt. Nos. 5; 13). In any case, Mr. Kayossi's claimed damages for "interest and court costs[,]" do not count towards the amount in controversy because "the amount in controversy is measured 'exclusive of interests and costs.'" Capeci, 2022 WL 17253527, at *1 (citing 28 U.S.C. § 1332(a)).

### 2. **Emotional Distress Damages**

As for Mr. Kayossi's claim for $80,000.00 in "emotional distress" damages, under New York law, "a plaintiff cannot, in an action for breach of contract, recover damages for emotional distress." Fleming v. Allstate Ins. Co., 106 A.D.2d 426, 426 (2d Dep't 1984), aff'd, 66 N.Y.2d 838 (1985); Capeci, 2022 WL 17253527, at *2.[4] To the extent that Mr. Kayossi seeks to recover emotional distress damages for his related claims for "fraud and misrepresentation[,]" conversion, and unjust enrichment (the "Related Claims"), that effort also

---

[4] The Court applies New York law to Mr. Kayossi's breach of contract and related claims in the Amended Complaint. Where a contract does not contain a choice of law provision, as it the case here, (Dkt. No. 10-3), courts consider a "center of gravity" or "grouping of contacts" approach, in which the applicable law is the "law of the jurisdiction [that], because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issues raised in the litigation." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 n.5 (2d Cir. 1997). Here, both Defendants are located in New York and the "17 bales of secondhand clothing" was to be shipped "from New York, United States, to Cotonou, Benin." (Dkt. Nos. 10 at 1 ¶ 6; 10-3). Further, Mr. Kayossi himself states in the Amended Complaint that "the events giving rise to this [Amended] [C]omplaint occurred in New York." (Dkt. No. 10 at 1 ¶ 5). In contrast, although Mr. Kayossi resides in Nebraska, (Dkt. No. 10 at 1 ¶ 1), and it appears that Mr. Kayossi electronically executed the Contract in Illinois, (Dkt. No. 10-3), there are otherwise no other contacts with Nebraska or Illinois. Accordingly, New York is the "center of gravity" of the Contract and, therefore, we apply New York law.

falls short.   Emotional distress damages are not available because the Related Claims are duplicative of Mr. Kayossi's breach of contract claim and therefore do not state a plausible claim for any relief.  See Lehrman v. Lovo, Inc., 790 F. Supp. 3d 348, 386 (S.D.N.Y. 2025) (dismissing fraud claim "as redundant when it merely restate[d] a breach of contract claim, i.e., when the only fraud alleged [wa]s that the defendant was not sincere when it promised to perform under the contract."); Ainbinder v. Money Center Fin. Grp., Inc., No. 10 Civ.5270 (SJF) (AKT), 2013 WL 1335997, at *8–9 (E.D.N.Y. Feb. 28, 2013) (dismissing unjust enrichment claim where a contract governed the dispute and conversion claim that was duplicative of breach of contract claim).

Accordingly, emotional distress damages are not available for any of Mr. Kayossi's claims in this action, and therefore, they may not be considered in calculating the amount in controversy.

### 3. Punitive Damages

As for Mr. Kayossi's request for an unspecified amount of punitive damages, we note that "[w]hen an amount for punitive damages is required for a claim to meet the jurisdictional threshold, courts will consider those punitive damages with heightened scrutiny."  Bracken, 290 F. Supp. 3d at 263.  Under New York law, punitive damages are generally not available in breach of contract actions unless the breach also involved a "particularly egregious fraud that was aimed at the public generally."  TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005). "An isolated transaction incident to an otherwise legitimate business does not constitute conduct aimed at the public generally."  Maciel v. BMW of N. Am., LLC, No. 20 Civ. 458 (JS) (AKT), 2021 WL 983013, at *12 (E.D.N.Y. Feb. 22, 2021), adopted by, 2021 WL 980845 (E.D.N.Y. Mar. 16, 2021).

Here, Mr. Kayossi does not allege that Defendants' conduct in failing to uphold the agreed-upon terms of the Contract "is anything more than an isolated transaction." Capeci, 2022 WL 17253527, at *2 (finding that plaintiffs' claim for punitive damages did not satisfy the amount in controversy requirement where plaintiffs "do not allege that [defendants'] conduct in denying their insurance claim is anything more than an isolated transaction."). To the extent Mr. Kayossi seeks punitive damages for his Related Claims, for the same reasons stated above, they also are not available because the Related Claims are duplicative of Mr. Kayossi's breach of contract claim and therefore do not state a plausible claim for relief. (See § III.B.2, supra).

Accordingly, punitive damages are not available and, therefore, they may not be considered in determining whether Mr. Kayossi has adequately alleged the threshold amount in controversy.

### 4. Consequential Damages

Mr. Kayossi includes in his damages request "any consequential damages that may be proven at trial[,]" but does not allege that he actually incurred any consequential damages as a result of Defendants' conduct. (Dkt. No. 10 at 2). Even if he did, Mr. Kayossi does not allege that "consequential damages . . . were foreseeable and within the contemplation of the parties at the time the contract was made," and therefore, "such damages are [neither available] under New York Law" nor may be relied upon to satisfy the amount in controversy. Garnes v. Hartford Ins. Co., No. 22 Civ. 3406 (RPF) (TAM), 2024 WL 4250268, at *4 (E.D.N.Y. July 23, 2024), adopted by, 2024 WL 4297655 (Sept. 26, 2024); see Kruglov v. Copart of Conn., Inc., 771 F. App'x 117, 119 (2d Cir. 2019) (holding that the plaintiff could not rely on consequential damages demand to satisfy the amount in controversy absent allegations that the parties contemplated such

damages at the time the insurer issued the policy); Avent v. Platinum Plus Auto Prot., No. 19 Civ. 1494 (BKS) (DJS), 2021 WL 706643, at *9 (N.D.N.Y. Feb. 23, 2021 (excluding consequential damages when calculating the amount in controversy absent allegations that the parties contemplated such damages at the time of contract).

*                    *                    *

Accordingly, given that the only portion of Mr. Kayossi's requested damages that counts towards the amount in controversy is his request for $13,585.00, "representing the total retail value of $14,985.00 [of the Mattresses] minus the $1,400.00 shipping fee[,]" (Dkt. No. 10 at 2), Mr. Kayossi fails to allege to a reasonable probability that $75,000.00 or more is in controversy in this lawsuit, as required for diversity jurisdiction.

### C. Leave to Amend

District courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. See Hill v. Curcione, 657 F.3d 116, 123–24 (2d Cir. 2011).  Here, because interests and costs may not be considered towards the amount in controversy, emotional distress and punitive damages are unavailable as a matter of law, and Mr. Kayossi does not allege any consequential damages, leave to amend would be futile.  (See § III.B, supra; Dkt. No. 10).  Further, Judge Engelmayer already granted Mr. Kayossi leave to amend the Complaint to cure its jurisdictional defects and warned Mr. Kayossi that "if [he] does not allege a sufficient basis for jurisdiction, the Court will dismiss the operative complaint, without prejudice to [his] ability to file the action in a court of competent jurisdiction."  (Dkt. No. 9).  See Garnes, 2024 WL 4250268, at *5 (dismissing pro se plaintiff's amended complaint for lack of subject matter jurisdiction without leave to amend where the

10

Court already gave plaintiff leave to amend the original complaint "to set forth good faith allegations showing whether the amount in controversy is met here."). Accordingly, we respectfully recommend that the Court dismiss the Amended Complaint without leave to amend.

### IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that the Court sua sponte **DISMISS** the Amended Complaint for lack of subject matter jurisdiction without leave to amend and without prejudice to Mr. Kayossi's ability to file the action in a court of competent jurisdiction.

The Clerk of Court is respectfully directed to mail a copy of this Order to Oyeto-Ola Brice Kayossi at 8002 Blondo Street Omaha, NE 68134.

Dated:     New York, New York
           May 15, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a

copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).